UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND RICHARD PRINE, JR.,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 1:21-cv-001607-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 12). |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding his application for disability benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 7).

Plaintiff argues as follows:

1. The ALJ erred by failing to evaluate the treating opinion evidence consistent with the regulations, Agency policy, and Ninth Circuit precedent.

2. The ALJ's "credibility" assessment is deficient generally because of the error described [], but also specifically so in failing to consider Plaintiff's stellar work history.

3. The ALJ erred as a matter of law by failing to account in the [residual functional capacity (RFC)] finding for all the limitations from Plaintiff's headaches, which were found to be a severe impairment.

(ECF No. 12-2, p. 3).[1] Having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, the Court finds as follows:

# I. ANALYSIS

## A. Medical Opinions

Plaintiff argues that the ALJ did not properly evaluate the medical opinions of treating physicians Dr. Holvik and Dr. Tariq. Specifically, Plaintiff argues that the ALJ did not provide specific and legitimate reasons to assign "little weight" to their opinions and failed to address the factors listed in 20 C.F.R. § 404.1527(c)(2). (ECF No. 12-2, pp. 17-24).

### 1. Specific and legitimate reasons

The Ninth Circuit has held the following regarding the weight given to medical opinion testimony from a treating physician:

> The medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician. *Id.* § 404.1527(c)(2)–(6).
>
> "To reject [the] uncontradicted opinion of a treating . . . doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (alteration in original) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). "If a treating . . . doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Bayliss*, 427 F.3d at 1216); *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("[The] reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion."). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

---

[1] Because some issues are interrelated, the Court addresses them in a different order than Plaintiff presents.

*Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).[2] "Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.*

Here, the opinions of Dr. Holvik and Dr. Tariq were contradicted by other doctors (*e.g.*, state agency medical consultants), and thus the Court considers whether the ALJ provided specific and legitimate reasons that are supported by substantial evidence. Specifically. the ALJ gave the following reasons for assigning "little weight" to Dr. Holvik's opinion:

> As for the opinion evidence, William Holvik, M.D., completed a questionnaire dated June 1, 2015 (Exhibit 4F). Dr. Holvik indicates the claimant can lift less than 10 pounds occasionally, and can stand and walk 2 hours out of an 8-hour workday. He noted the claimant could sit for 4 hours. He had this [a]s related to cervical radiculopathy. He also noted the claimant could never climb, balance, stoop, kneel, crouch or crawl, and was limited in reaching due to weakness. He noted handling and fingering was limited due to pain and dizziness. The claimant should not work at heights or around moving machinery. He noted he had an unstable gait, and motor impairments with pain (Exhibit 4F). Dr. Holvik completed another questionnaire dated November 9, 2015 asserting essentially the same limitations (Exhibit 8F). This opinion is afforded little weight, as it is inconsistent with the evidence of record. Physical examination in May of 2014 revealed a stable gait, full range of motion, and adequate range of motion of all extremities with normal strength (Exhibit 3F, pgs. 4-5). In May of 2015, the claimant's motor function was intact, he had a stable gait and normal strength, with no gross abnormalities (Exhibit 3F, pg. 24). 3 months after this, the completely normal physical examination including full and painless range of motion was noted (Exhibit 7F, pg. 11).

(A.R. 693).

"A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider." *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014). Here, the specific records cited by the ALJ came from Dr. Holvik's own treatment notes and could reasonably be construed to contradict

---

[2] Because Plaintiff filed his application for benefits before March 27, 2017, 20 C.F.R. § 404.1527 applies in considering the weight given to his treating physicians' opinions. (*See* AR 185). For applications filed on or after March 27, 2017, 20 C.F.R. § 404.1520c applies; notably, no deference or specific evidentiary weight is given to medical opinions.

Dr. Holvik's very restrictive limitations. For example, Plaintiff's normal examination findings, stable gait, and intact strength appear at odds with Dr. Holvik's opinion that Plaintiff had an unstable gait and was limited to standing and walking for two hours in an eight-hour day. (A.R. 360-61 (noting stable gait and normal strength in May 2014), 380 (noting stable gait and normal strength in May 2015), 413 (June 2015 opinion from Dr. Holvik stating that Plaintiff has an unstable gait), 437 (noting stable gait and normal strength in August 2015)).

As for Dr. Tariq's opinion, the ALJ gave the following reasons for assigning "little weight" to it:

> Asma Tariq, M.D., completed a questionnaire dated August 11, 2016 (Exhibit 10F). Diagnoses were severe neck pain, degenerative disc disease of the cervical spine, and severe anxiety. Dr. Tariq indicates the claimant can walk less than one block, sit for 10 minutes and then needs to recline, and stand for 5 minutes. The claimant [can] sit, stand and/or walk for less than 2 hours total in an 8-hour working day. He needs a job that permits shifting positions at will. He needs to take unscheduled breaks during the workday. The claimant can never lift any weight, can never twist, stoop, crouch, squat, or climb ladders, and can rarely climb stairs. Dr. Tariq indicates any minor neck movement causes severe symptoms in the hands fingers and arms. She notes the claimant would be off task 25% or more of the day, and was incapable of even low stress work. Dr. Tariq speculated the claimant would miss 4 days or more per month due to his conditions (Exhibit 10F). Dr. Tariq also reported the claimant could not work (Exhibit 13F, p. 34). This opinion is afforded little weight, for the same reasons that the opinion discussed above [meaning, Dr. Holvik's opinion,] is inconsistent with and not supported by the record. Specifically, in March of 2016, the claimant reported performing household chores (Exhibit 12F, pg. 70), with objective findings of improvement in the claimant's shoulder mobility and strength (Exhibit 12F, p. 67). Examination in August of 2016 revealed the claimant had full motor strength in both the upper and lower extremities, with intact sensation, rapid movements of the upper extremities, and he reported he was generally able to perform his usual activities (Exhibit 13F, pp. 1-2, 29, 30). All of which is inconsistent with the opinion of Dr. Tariq which appears to be based on the claimant's subjective complaints rather than the objective findings noted in the record.

(A.R. 693-94).

The ALJ's first reason to discount Dr. Tariq's opinion—that it was inconsistent with record evidence—is reasonably supported by the record. Notably, improvements in Plaintiff's shoulder mobility and strength, Plaintiff's ability to do some household chores, and normal

1 examination findings discussed earlier contradict the extreme limitations assessed by Dr. Tariq,
2 such as that Plaintiff could never lift any weight. (A.R. 460 (August 2016 opinion from Dr. Tariq
3 stating that Plaintiff could never lift less than ten pounds), 536 (noting good improvements in
4 Plaintiff's shoulder mobility and strength in April 2016), 539 (noting that Plaintiff was able to
5 perform a few household chores over the weekend in March 2016)).

6 Plaintiff argues that the ALJ erred in citing part of the record (*see* AR 558-59 – cited as
7 Exhibit 13F pp. 1-2), of an August 2016 examination, because this record does not reflect the
8 findings that the ALJ relied on. (ECF No. 12-2, p. 22). Defendant concedes that the ALJ erred in
9 citing this record, which relates to a March 2017 medical visit, but argues that it appears that the
10 ALJ intended to cite an August 16, 2016 examination (*see* AR 462-63), which does reflect some
11 of the findings that the ALJ relied on, such as "[m]otor strength upper and lower extremities is
12 Grade 5/5." (ECF No. 13, p. 24). While the ALJ cited a wrong record, the evidence that the ALJ
13 apparently intended to rely on remains a valid basis to discount Dr. Tariq's opinion. *See Warre v.*
14 *Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1005, n.3 (9th Cir. 2006) (noting that, while the
15 Commissioner may not provide new grounds for the ALJ's opinion, the Commissioner can
16 provide additional support for the ALJ's position). Moreover, the reasons discussed above and
17 below provide independent bases to discount this opinion.

18 The ALJ's next reason—that Dr. Tariq's opinion appears to be based on Plaintiff's
19 subjective complaints rather than objective findings—is a specific and legitimate reason to
20 discount the opinion. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir.
21 2004) (upholding ALJ's decision to discount treating physician's opinion that was not supported
22 by objective medical evidence and was based on the claimant's subjective descriptions of pain).
23 As discussed above, the objective findings in the record do not support the strict limitations
24 opined by Dr. Tariq. Further, Dr. Tariq's report repeatedly cites Plaintiff's severe headaches and
25 neck pain to support the opined limitations, thus indicating that the opinion was largely based on
26 Plaintiff's subjective complaints about his pain. (*See, e.g.*, A.R. 458 (noting "severe, throbbing
27 headaches and neck pain (8 – 10)").

28 Lastly, it is worth noting that the ALJ's assessment of Plaintiff's limitations was based on

other medical opinions. Most notably, the ALJ afforded "[s]ubstantial weight" to the opinions of state agency medical consultants, Dr. W. Jackson and A. Resnik, who concluded that Plaintiff was "capable of performing less than the full range of light exertional work," with some limitations. (A.R. 696) (citing A.R. 86, 103). Moreover, elsewhere in the opinion, the ALJ cited multiple medical records showing normal examination findings and reports of improvements that support the ALJ's determination that Plaintiff was not disabled. (*See, e.g.,* A.R. 692) (citing 610 – Plaintiff reporting that his lower back pain was gone and that his neck pain had improved); (A.R. 693) (citing A.R. 658 – noting normal examination findings such as normal muscle tone).

Upon review, the Court concludes that the ALJ provided specific and legitimate reasons supported by substantial evidence to discount the opinions of Dr. Holvik and Dr. Tariq.

### 2. 20 C.F.R. § 404.1527(c)(2) factors

When a treating provider's medical opinions are not given controlling weight, the ALJ weighs it "according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician." *Trevizo*, 871 F.3d at 675 (citing 20 C.F.R. 404.1527(c)(2)-(6). Plaintiff argues that "the ALJ ignored without comment numerous § 404.1527 factors that favor an award of benefits to Plaintiff" and "[t]he ALJ's failure to discuss these standing alone is error that requires remand." (ECF No. 12-2, p. 21).

As an initial matter, the ALJ was not required to discuss the § 404.1527 factors to avoid committing legal error. *Ferris v. Colvin*, No. 2:14-CV-02569-AC, 2016 WL 1117771, at *6 (E.D. Cal. Mar. 22, 2016) ("Plaintiff points to no authority for the proposition that ALJs must discuss each and every § 404.1527(c)(2) factor in their decision, and indeed no such authority exists."). Regardless, the ALJ reviewed the medical evidence—including treatment records from Dr. Holvik and Dr. Tariq—and specifically discussed (as described above) how their opinions were inconsistent and not supported by the record. Such is sufficient to show that the ALJ considered the § 404.1527(c)(2) factors.

### B. RFC and Plaintiff's Subjective Complaints

Plaintiff's remaining arguments—that the ALJ erroneously assessed the credibility of his

subjective complaints and did not account for limitations caused by his headaches in the RFC—are interrelated. This is because the professed limitations from Plaintiff's headaches are based largely on his subjective complaints, which the ALJ found not to be fully credible. The Court begins by reviewing the ALJ's discounting of Plaintiff's subjective complaints and thereafter considers how this affects the RFC determination.

### 1. Subjective Complaints

The ALJ recounted Plaintiff's subjective complaints and the reasons given to discount them as follows:

> The claimant alleges disability due to multiple bulging discs in his neck (Exhibit 1E). He reports chronic neck and left arm pain, with headache and numbness to the left arm and hand. He note[d] medications help relieve his pain (Exhibit 5E). In a Function Report, the claimant reports he is no longer able to golf, and his conditions affect his ability to lift, squat, bend, stand, reach, kneel stair climb, complete tasks, and use his hands (Exhibits 6E; 10E). The claimant testified that his condition had improved due to limited movement. He reported he still has headaches. He noted he does not have good use of his fingers at hand. He notes sunlight causes him to overheat easily. The claimant testified that he reads a lot, attends church occasionally and tutors children. He noted he could do light housekeeping, but nothing with squeezing. The claimant reported he was unable to lift 20 pounds, and could not use his left hand. He noted he can drive for 10 minutes[3], and then will start to tense up and get a headache with a tight neck. He noted he has more than 4 days per month with pain that is bad. He noted he has neck and severe arm pain continuously (hearing testimony).
>
> . . . .
>
> Despite the allegations of symptoms and limitations preventing all work, the record reflects that the claimant went on a church mission to Kenya since the alleged onset date. Although extended travel and a disability are not necessarily mutually exclusive, the claimant's decision to go to another continent tends to suggest that the alleged symptoms and limitations may have been overstated. Further statements and activities supporting the above residual functional capacity are as follows: the clamant presented for a refill of medication in January of 2015 and stated he is working two to four hours a day performing semi-odd jobs (Exhibit 3F, pg. 16). In December of 2015, the claimant reported driving himself to the appointment, and that he does not need help with bathing, dressing, or grooming, and has adequate motivation. He can manage money and prepare food for himself (Exhibit 9F). In a treatment note dated March of 2016, the claimant

---

[3] The Court notes that this reference to "minutes" appears to be an error. The transcript reveals that Plaintiff testified that he could drive for "about ten miles." (*Compare* A.R. 690 *with* A.R. 726). However, such an error was harmless and Plaintiff does not argue otherwise.

> reported was able to do a few household chores over weekend (Exhibit 12F, pg. 70). In August of 2016, the claimant presented in follow-up and reported he is able to generally perform usual activities (Exhibit 13F, pg. 29). The claimant reported in December 2016 that his lower back pain is gone, and his neck pain has improved (Exhibit 14F, pg. 8). In July of 2017, the claimant reported CESI had helped very much, and he denied side effects from medications. He displayed no pain behavior, was in no acute distress, and had a nonantalgic gait (Exhibit 18F, pg.11). The claimant went on a church missionary trip in August of 2019 to Kenya (Exhibit 21F, p. 11). In March of 2020, the claimant noted he was able to cook, vacuum, mop, take out the trash, do laundry and wash dishes. He was taking short walks outdoors. He can use a computer, text, or do telephone work for 1 ½ hours per day. He noted he read for 3 hours a day (Exhibit 17F).

(A.R. 690, 697).

Notably, Plaintiff does not challenge the ALJ's reasons to discount his subjective complaints but argues that the ALJ's opinion failed to consider his "near perfect wor[k] record for 34 years prior to filing [his] claim for disability," noting a line of caselaw holding that it would be unlikely someone would trade their work career for less lucrative disability benefits. (ECF No. 12-2, p. 25).

True, social security regulations require an ALJ to consider "all of the evidence presented, including information about [a claimant's] prior work record." 20 C.F.R. § 404.1529(c)(3). However, the ALJ is not required to "discuss the work history in the credibility section of the ALJ's decision." *Rocha v. Comm'r of Soc. Sec.*, No. 1:15-CV-01298-SAB, 2016 WL 7034739, at *16 (E.D. Cal. Dec. 1, 2016). Moreover, an "ALJ is not required to discuss evidence that is neither significant nor probative." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).

Here, despite Plaintiff characterizing his work history as "near perfect," he offers no developed argument as to what in his work history was significant or probative as to his credibility determination that the ALJ should have considered. Accordingly, the Court cannot conclude that the ALJ erred by failing to discuss it, especially considering that the ALJ otherwise gave multiple reasons for discounting Plaintiff's credibility, which reasons Plaintiff does not challenge. *See Piceno v. Comm'r of Soc. Sec.*, No. 1:18-CV-00653-EPG, 2019 WL 1902590, at *4 (E.D. Cal. Apr. 29, 2019) (declining to find error on this issue because "an ALJ is not legally

required to discuss a plaintiff's work history" and "the ALJ provided other reasons for its decision which were not challenged by the Plaintiff").

### 2. RFC Determination

A claimant's RFC is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). An ALJ's RFC assessment is based on the record as a whole and need not match any medical opinion. *See Mills v. Comm'r of Soc. Sec.*, No. 2:13-CV-0899-KJN, 2014 WL 4195012, at *4 n.8 (E.D. Cal. Aug. 22, 2014) ("[B]ecause it is the ALJ's responsibility to formulate an RFC that is based on the record *as a whole*, . . . the RFC need not exactly match the opinion or findings of any particular medical source."). An ALJ's RFC determination will be upheld if "the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d at 1217.

Here, the ALJ assessed the following RFC for Plaintiff:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant is occasionally able to climb ramps, stairs, ladders, ropes and scaffolds, and is occasionally able to balance, crawl, crouch, kneel and stoop. The claimant is able to reach overhead, bilaterally, on an occasional basis, and is able to reach in all other directions, bilaterally, on a frequent basis. The claimant is able to handle, finger and feel, bilaterally, on a frequent basis, and should not work in environments exposing them to unprotected heights, machinery with dangerous, moving mechanical parts, or direct sunlight.

(A.R. 689-90).

Plaintiff argues that this RFC determination is flawed because, "[d]espite determining that Plaintiff's medically determinable headaches are "severe", *i.e.* resulted in more than minimal work-related limitations, [] the ALJ did not account [for] these or their associated limitations in the RFC finding." (ECF No. 12, p. 15). But contrary to what Plaintiff's argument suggests, a step-two finding does not control the RFC determination:

> Step two is merely a threshold determination meant to screen out weak claims. *Bowen v. Yuckert*, 482 U.S. 137, 146–47, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). It is not meant to identify the impairments that should be taken into account when determining the RFC. In fact, "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996). The RFC therefore should be exactly the same regardless of whether certain impairments are considered "severe" or not.

*Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017).

Notably, Plaintiff's headache symptoms were largely based on his subjective complaints, which as noted above, the ALJ discounted for legally sufficient reasons. Moreover, to the extent that Plaintiff's headache symptoms warranted a more restrictive RFC based on the opinions of Dr. Holvik and Dr. Tariq, as discussed above, the ALJ gave legally sufficient reasons to discount their assessed limitations. Accordingly, the Court concludes that the ALJ did not err by failing to include more restrictive limitations in the RFC assessment based on Plaintiff's headaches.

## II. CONCLUSION AND ORDER

Based on the above reasons, the decision of the Commissioner of Social Security is affirmed. And the Clerk of the Court is respectfully directed to close this case.

IT IS SO ORDERED.

Dated: **September 9, 2022**   /s/ *Erica P. Grosjean*
UNITED STATES MAGISTRATE JUDGE